1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE EASTERN DISTRICT OF CALIFORNIA

8    KAREN S. MATTOX,

9                    Plaintiff,                No. CIV S-06-1698 GGH

10           vs.

11
     MICHAEL J. ASTRUE,                        ORDER
12   Commissioner of
     Social Security,
13
                     Defendant.
14   _____/

15           Plaintiff seeks judicial review of a final decision of the Commissioner of Social

16   Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB")

17   under Title II of the Social Security Act ("Act").[1]  For the reasons that follow, plaintiff's Motion

18   for Summary Judgment or Remand is DENIED, the Commissioner's Cross Motion for Summary

19   Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

20   BACKGROUND

21           Plaintiff, born September 19, 1952, applied on June 20, 2001 for disability

22   benefits.  (Tr. at 69-71.)  Plaintiff alleged she was unable to work since June 6, 2000, due to

23   depression and stress.  (Tr. at 69, 73.)

24   \\\\\

25   _____

26      [1]  The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed
     before a magistrate judge).

1       In a decision dated March 26, 2003, ALJ Antonio Acevedo-Torres determined

2  plaintiff was not disabled.  (Tr. at 38-47.)  On appeal, the Appeals Council vacated the decision

3  and remanded for a supplemental hearing with the following directives: explain the plaintiff's

4  postings on her earnings records for 2001 and 2002; further consider the nonexamining source

5  opinion and explain the weight given this evidence; obtain further evidence regarding plaintiff's

6  depression; obtain medical expert evidence to clarify the nature and severity of plaintiff's

7  impairment; further evaluate plaintiff's mental impairment by providing specific findings and

8  rationale for each area in the regulations; further consider plaintiff's maximum residual

9  functional capacity and provide rationale with references to the record; and obtain vocational

10 testimony pursuant to specific instructions. (Tr. at 354-55.)

11      After another hearing, ALJ Acevedo-Torres issued another decision on February

12 15, 2005, and made the following findings:[2]

13

_____

14      [2] Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
15 disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in
part, as an "inability to engage in any substantial gainful activity" due to "a medically
16 determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
17 See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
18         Step one:  Is the claimant engaging in substantial gainful
      activity?  If so, the claimant is found not disabled.  If not, proceed
19    to step two.
           Step two:  Does the claimant have a "severe" impairment?
20    If so, proceed to step three.  If not, then a finding of not disabled is
      appropriate.
21         Step three:  Does the claimant's impairment or combination
      of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
22    404, Subpt. P, App.1?  If so, the claimant is automatically
      determined disabled.  If not, proceed to step four.
23         Step four:  Is the claimant capable of performing his past
      work?  If so, the claimant is not disabled.  If not, proceed to step
24    five.
           Step five:  Does the claimant have the residual functional
25    capacity to perform any other work?  If so, the claimant is not
      disabled.  If not, the claimant is disabled.
26 Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1.     The claimant has not engaged in substantial gainful activity since June 6, 2000.

2.     The medical evidence establishes that the claimant has a severe depressive disorder, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3.     The claimant's allegations in regards to the degree of her limitations and symptoms are found to be not fully credible for the reasons stated above.

4.     The claimant has the residual functional capacity to perform medium work with the restriction that the work is unskilled work and is performed in a low work stress environment.

5.     The claimant is unable to perform her past relevant work as [] a Data Communication Analyst and Supervisory network Control Operator.

6.     The claimant is 52 years old, which is defined as closely approaching advanced age.

7.     The claimant has a college degree.

8.     The claimant does not have any acquired work skills which are transferable to the skilled or semi skilled work functions of other work.

9.     Considering the types of work which the claimant is still functionally capable of performing in combination with her age, education and work experience, her [sic] can be expected to make a vocational adjustment to work which exists in significant numbers in the national economy. The vocational expert testified that these jobs included employment as a sweeper/cleaner, cleaner/hospital, a dump truck driver, a mail clerk, and a house cleaner.

10.    The claimant was not under a "disability," as defined in the Social Security Act at any time through the date of this decision.

(Tr. at 27-28.)

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Bowen</u>, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id</u>

1  ISSUES PRESENTED

2          Plaintiff has raised the following issues: A.  Whether the ALJ Failed to Provide

3  Meaningful Notice Regarding the Right to Counsel, and Failed to Fully Develop the Record; B.

4  Whether the ALJ Unlawfully Rejected the Opinions of Plaintiff's Treating Psychologist and

5  Social Security's Consultative Examiners; C.  Whether the ALJ Failed to Credit Plaintiff's

6  Testimony and Statements of Third Parties Regarding Plaintiff's Functional Limitations;  D.

7  Whether Plaintiff's Impairment Met or Equaled Listing 12.04; and E.  Whether the ALJ Failed to

8  Include All of Plaintiff's Limitations in the Hypothetical to the Vocational Expert.

9  LEGAL STANDARDS

10          The court reviews the Commissioner's decision to determine whether (1) it is

11 based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

12 the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

13 Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

14 Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

15 accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

16 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

17 (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

18 testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

19 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

20 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

21 Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

22 ANALYSIS

23      A.  Meaningful Notice Regarding the Right to Counsel

24          Plaintiff claims that the ALJ should have advised her of her right to counsel and

25 the benefits of counsel since plaintiff was unrepresented and mentally ill.

26 \\\\\\

4

1     Plaintiff has a statutory right to counsel at the administrative hearing which may

2  be knowingly and intelligently waived.  Duns v. Heckler, 586 F. Supp. 359, 364 (N.D. Cal.

3  1984), citing Ware v. Schweiker, 651 F.2d 408 (5th Cir. 1982), Floyd v. Schweiker, 550 F. Supp.

4  863 (N.D. Ill. 1982).  Even if the waiver is deficient, plaintiff must demonstrate prejudice or

5  unfairness in the proceedings in order to obtain a remand.  Hall v. Secretary of Health, Educ. &

6  Welfare, 602 F.2d 1372, 1378 (9th Cir. 1979).  The real issue, however, is not whether the waiver

7  was knowing or intelligent, but whether without the representation, the ALJ met his burden "to

8  conscientiously and scrupulously probe into, inquire of, and explore for all the relevant facts" in

9  order to protect plaintiff's interest.  Id., quoting Vidal v. Harris, 637 F.2d 710, 713 (9th Cir.

10 1981); Cox v. Califano, 587 F.2d 988 (9th Cir. 1978).  This duty includes diligently ensuring that

11 both favorable and unfavorable facts and circumstances are elicited at hearing.  Key v. Heckler,

12 754 F.2d 1545, 1551 (9th Cir. 1985).  The ALJ must fully and fairly develop the record, and when

13 a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all

14 relevant facts."  Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001).  Only if the plaintiff can

15 show prejudice or unfairness in the administrative proceeding as a result of not having counsel is

16 remand warranted.  Vidal, 637 F.2d at 713.

17     Plaintiff has failed to show prejudice as a result of not having counsel at the

18 second administrative hearing.  She had counsel at the first hearing, and was already familiar

19 with the hearing process when she appeared for the second hearing.[3]  (Tr. at 452.)  At this second

20 hearing, the ALJ noted that plaintiff was not represented, but explained that the hearing was

21 remanded for purposes of medical and vocational expert testimony.  The ALJ then asked plaintiff

22 if she wished to proceed with the hearing and she responded, "yes."  (Tr. at 476.)

23 \\\\\

24 \\\\\

25

26     [3]  Plaintiff also had counsel at various levels of appeal.  (Tr. at 12, 357.)

1    The ALJ was not required to explain the benefits of legal representation but did

2  have the duty to be diligent in developing the record.[4]  Plaintiff cites a litany of questions which

3  the ALJ allegedly failed to ask; however, the record reveals that the ALJ did fully develop the

4  pertinent subject areas.  For example, the ALJ asked plaintiff how often she saw a doctor and for

5  what reason, what kinds of medications she was taking, how long she could do certain activities

6  such as stand and sit, how she spends her day, what activities she does, including hobbies and

7  housework, errands, about her daughter living with her, how much she drives, and whether she

8  wished to testify to anything else.  (Id. at 481-85.)  Plaintiff asked some questions about her

9  current psychiatric treatment and what other evaluations she could obtain, and the ALJ explained

10  the process to her.  (Id. at 486-87.)  When plaintiff mentioned a Dr. Doolittle which the ALJ did

11  not seem to be aware of, the ALJ made note of it, and that record was obtained and analyzed by

12  the ALJ.  (Id. at 482.)

13    Plaintiff claims the lack of counsel was most evident in plaintiff's inability to

14  cross-examine the medical and vocational experts.  The record was fully developed in these areas

15  in any event.  The ALJ asked the medical expert to define plaintiff's mental impairment, her

16  functional limitations, and limitations in mental activity.  (Tr. at 488-89.)  Plaintiff was invited to

17  ask the expert any questions, which she did.  (Id. at 490.)  She asked about the test for

18  determining her ability to maintain concentration, and made argument about it.  (Id. at 490.)  She

19  questioned him about her low threshold for stress and the medical expert agreed with her, based

20  on the records.  (Id.)  She also noted that she had not explained to Dr. Morse that her retirement

21  was based on disability.  (Id. at 491.)  Plaintiff also asked questions of the vocational expert and

22  questioned her ability to do some of the medium level jobs based on her physical problems.  (Tr.

23  at 496-97.)  She also questioned the expert about her past work as being light and skilled and the

24

25    [4] Plaintiff cites to mental illness as a reason for this requirement, but the record indicates
that plaintiff had a master's degree in computer science, and was found to be of above average
intellectual capacity.  Her alleged impairments are depression and anxiety which should not

26  affect her ability to represent herself.  (Id. at 17, 219.)

1    meaning of those categories.  (Id. at 497-99.)

2          Plaintiff's claim that she did not cross-examine the medical expert about his

3    diagnosis of depressed mood in comparison to other treating and consulting specialists' more

4    serious diagnoses of major depressive disorder with psychotic features, is not significant.  Even

5    counsel who is present at administrative hearings does not always cross-examine a witness to this

6    extent.  Furthermore, these types of arguments can be made in the briefs before this court, and

7    plaintiff has competent counsel at this stage of the proceedings who is able to do so.  Cross-

8    examination is not a requirement.  All that is required is that the ALJ  fully and fairly develop the

9    record, and do so in an especially diligent manner.

10          Plaintiff has not shown prejudice or unfairness in the administrative proceeding as

11    a result of not having counsel at the second administrative hearing.

12          B.  The ALJ Did Not Fail to Develop The Record

13          Plaintiff next claims that the ALJ failed to secure important medical records,

14    especially in light of the fact that plaintiff was not represented by counsel.

15          Disability hearings are not adversarial.  Dixon v. Heckler, 811 F.2d 506, 510 (10th

16    Cir. 1987) (holding that ALJ has basic duty to "inform himself about facts relevant to his

17    decision") (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J.,

18    concurring)).  The ALJ must fully and fairly develop the record, and when a claimant is not

19    represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts."

20    Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).[5]  The duty also is heightened in the

21    case of a mentally ill claimant who may not be able to protect him or herself.  Id; see also SSR

22    96-2p (case may require additional development to obtain more evidence or to clarify reported

23    clinical signs or laboratory findings).  This does not mean that plaintiff may remain silent about

24    his real complaints, or that plaintiff has no duty to present (and highlight) the relevant medical

25

26        [5]  See also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the
      record even when claimant is represented).

                                    7

1  evidence to the ALJ.  Bowen v. Yuckert, 482 U.S. 137, 146, n. 5, 107 S. Ct. 2287 (1987) ("It is

2  not unreasonable to require the claimant, who is in a better position to provide information about

3  his own medical condition, to do so.").

4        The ALJ can develop the record by (1) making a reasonable attempt to obtain

5  medical evidence from the claimant's treating sources, (2) ordering a consultative examination

6  when the medical evidence is incomplete or unclear and undermines ability to resolve the

7  disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4)

8  continuing the hearing; or (5) keeping the record open for supplementation.  See Tonapetyan, 242

9  F.3d. at 1150; 20 C.F.R. 404.1517, 416.917; 42 U.S.C. § 423(d)(5)(A), (B).

10        Plaintiff contends that the record does not contain the treating records of Drs.

11 Hutchinson and Pleasant, and that as a result the ALJ discounted Dr. Hutchinson's opinion as not

12 backed up by objective findings which would have been revealed in these notes.  As pointed out

13 by defendant, however, plaintiff has counsel at present and still has not produced those crucial

14 records.  Furthermore, the ALJ obtained further medical evidence from treating source Dr.

15 Straehley, (tr. at 318-23), consultant Dr. Morse, (tr. at 327-35), and expert testimony at the

16 second hearing by psychologist Dr. Walter and vocational consultant Steven Russell, all in

17 compliance with the Appeals Councils' remand order.  (Tr. at 353-56.)  The ALJ fulfilled his

18 duty to develop the record in this case.

19        C.  Whether the ALJ Erred in Rejecting the Opinion of Plaintiff's Treating Physicians

20        Plaintiff claims that the ALJ erred in rejecting the treating opinion of psychologist

21 Dr. Hutchinson and consulting opinion of Dr. Straehley.

22         The weight given to medical opinions depends in part on whether they are

23 proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

24 \\\\\

25 \\\\\

26 \\\\\

1 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[6]  Ordinarily,

2 more weight is given to the opinion of a treating professional, who has a greater opportunity to

3 know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

4 Cir. 1996).

5          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

6 considering its source, the court considers whether (1) contradictory opinions are in the record;

7 and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of

8 a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester ,

9 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may

10 be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

11 professional's opinion generally is accorded superior weight, if it is contradicted by a supported

12 examining professional's opinion (supported by different independent clinical findings), the ALJ

13 may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

14 Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

15 weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

16  2001),[7] except that the ALJ in any event need not give it any weight if it is conclusory and

17 supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

18 (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

19 881 F.2d at 751.  Likewise, the opinion of an examining physician is entitled to greater weight

20

21      [6]  The regulations differentiate between opinions from "acceptable medical sources" and
"other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed

22 psychologists are considered "acceptable medical sources," and social workers are considered
"other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status

23 when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"

24 accordingly are given less weight than opinions from "acceptable medical sources."

25      [7]  The factors include: (1) length of the treatment relationship; (2) frequency of
examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;

26 (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1   than the opinion of a nonexamining physician.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th

2   Cir.1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984).  The opinion of a non-examining

3   professional, without other evidence, is insufficient to reject the opinion of a treating or

4   examining professional.  Lester, 81 F.3d at 831.

5              Reviewing administrative decisions involving mental/emotional illness are akin to

6   wrestling with shadows.  In rejecting the opinions of mental illness clinicians, the ALJ will opine

7   that objective evidence of the asserted mental problem is lacking as if there were diagnostic tools

8   available such as a "depression X-ray."  On the other hand, basing lifetime disability decisions

9   essentially on the subjective statements of a person with an incentive to exaggerate seems hardly

10  like a wise or meaningful way to determine real mental disability.  Thus, after the wrestling

11  match, aka analysis, one feels as if he was not able to come to grips with facts necessary for a

12  correct decision.  One does the best he can.

13             In this case, the ALJ declined to credit the opinions of Drs. Hutchinson and

14  Straehley because the objective findings did not support their conclusions that plaintiff could not

15  withstand minimal stress, and found that these conclusions were based on plaintiff's subjective

16  complaints.  (Tr. at 19.)   He also noted that the remaining objective findings in the record did not

17  support these conclusions.  (Id. at 19, 21.)   The ALJ also took note of the paucity of treating

18  records for Dr. Hutchinson, and although plaintiff claims it was due to her not having counsel

19  and the ALJ's failure to obtain these records that they are not part of the transcript; see discussion

20  supra; the fact remains that plaintiff has the duty to submit records in support of her case and still

21  has not done so despite being represented by counsel at the present time.  Plaintiff refers to

22  monthly therapy sessions over a four year time period and cites to the record in support; however,

23  those references only mention future planned monthly or bi-monthly visits but do not include

24  these records.  See e.g. tr. at 305, 314.

25             Plaintiff also refers to objective medical evidence, and argues that in addition to

26  these regular therapy sessions, there were prescriptions for anti-depressant medications and

10

1   psychiatric testing.  What is not mentioned, though, is that these treatments are based solely on

2   plaintiff's subjective complaints, which the ALJ discounted.  "A physician's opinion of disability

3   'premised to a large extent upon the claimant's own accounts of his symptoms and limitations'

4   may be disregarded where those complaints have been 'properly discounted.'"  Morgan v.

5   Commissioner of Social Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted).  See

6   discussion infra regarding plaintiff's credibility.  For example, Dr. Hutchinson on July 29, 2001,

7   stated that plaintiff's symptoms met the requirements of DSM-IV for major depression.  She

8   explained that plaintiff "complained of lack of energy, loss of appetite, anhedonia, headaches,

9   attention and concentration problems and problems with her short term memory.  She also

10  complained of hearing voices.  These voices were vague and poorly defined but represented the

11  severity of her depression."  (Tr. at 218.)  Most of these symptoms cannot be verified, as the ALJ

12  explained.  Rather, Dr. Hutchinson based her assessment solely on plaintiff's complaints.  Of the

13  symptoms capable of verification the ALJ gave an example wherein plaintiff had complained of

14  weight loss but in fact had gained two pounds since 1999.  (Tr. at 22.)

15          The ALJ referred to the evaluation forms submitted by Hutchinson and found they

16  did not support her assessment.  For example, an evaluation dated July 29, 2001, noted that

17  plaintiff was fully oriented to time, place and person, despite significant affective disorder.  (Tr.

18  at 218.)  Plaintiff had enough attention and concentration to facilitate the evaluation which was

19  not compromised, but she was preoccupied and depressed.  Dr. Hutchinson seemed to place

20  significant reliance on plaintiff's complaints.  For example, she wrote that plaintiff thought her

21  psychological condition was contributing to her problems with concentration.  (Id.)  Plaintiff was

22  fully cooperative at the evaluation, and tracked the conversation well without needing repeated

23  questions.  (Id.)  Plaintiff's intellect was above average and long term memory was good.  There

24  were no neuropsychological deficits or substantial signs of aphasia or apraxia, no signs of

25  disordered verbal behavior, visual hallucinations, illusion or delusion, but plaintiff complained of

26  hearing voices.  Non-verbal behavior was unremarkable.  Plaintiff did not show notable anxiety

1   or emotional lability.[8]  There was no bizarre behavior, dramatics, or histrionics.  (Id. at 219.)

2   Plaintiff reported she had been sleeping poorly but her sleep had improved.  (Id. at 219-20.)

3   Significantly, although plaintiff focuses on anxiety as a major issue now, she reported to Dr.

4   Hutchinson that she was experiencing no anxiety or panic attacks.  (Id. at 220.)  Dr. Hutchinson

5   predicted that plaintiff would not be able to work any time in the future due to "major depressive

6   disorder with psychotic features, single episode, in partial remission."  (Id. at 222.)   The ALJ

7   noted most of this information and that plaintiff did not have difficulties during the exam.  (Id. at

8   22.)  He concluded that Dr. Hutchinson's finding of restriction in attention and concentration was

9   based on plaintiff's complaints rather than these objective findings.  (Id.)

10          The ALJ also thought Dr. Hutchinson's October 28, 2002 report did not support

11  her findings.  At this time, the psychologist diagnosed plaintiff with major depressive disorder

12  with psychotic features, single episode, moderate.  (Tr. at 304.)  She noted a good response to

13  Effexor, a medication for depression and anxiety, and slight improvement in mood.  (Id.)  A

14  condition which can be controlled or corrected by medication is not disabling.  See Montijo v.

15  Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with

16  medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983) (rib

17  condition controlled with antibiotics not considered disabling).  She did not, however, give any

18  basis for her diagnosis in this report, especially the finding of psychotic features, which the ALJ

19  noted.  Nor did she give any basis for similar diagnoses in reports dated November 24, 2000,

20  January 27, 2001, and May 1, 2002.  (Id. at 307-15.)

21          Dr. Hutchinson also completed a form regarding ability to do work related

22  activities and found that plaintiff had only a fair to poor or no ability to do almost all activities,

23  but this form did not refer to any findings in support.  (Tr. at 316-17.)  The ALJ specifically

24

25          [8]  Plaintiff refers to Dr. Hutchinson's notation in the same report of "high levels of
    anxiety...."  (Tr. at 218.)  On the very next page, the psychologist inconsistently stated that
26  plaintiff "did not display notable anxiety ...."  (Id. at 219.)

referred to this report in noting that although plaintiff was found to have poor to no ability to
maintain attention, concentration, deal with work stress or interact with others, nothing in the
"psychological evaluations" support these assessments.  (Id. at 21.)  The ALJ is correct.  See tr. at
304-15.)  The ALJ also referred to Dr. Hutchinson's first report, dated November 24, 2000, in
which it is noted that plaintiff had been treated for depression since October, 1998, and that
plaintiff reported "vegetative signs of depression;" however, the ALJ also noted that the signs
were not specified in this report and there was no documentation of treatment prior to November,
2000.  (Id. at 21.)

         The ALJ spent more than two pages, single spaced, analyzing Dr. Hutchinson's
reports which can be summed up as containing assessments that are severe but are not backed up
by objective medical findings.  (Tr. at 21-23.)  Furthermore, the ALJ noted that six months after
plaintiff left the job that is alleged to be the source of her depression, plaintiff was in the early
phase of remission from her depression, and her affect was brighter.  (Id. at 21.)  In fact, in
January, 2001, Dr. Hutchinson thought that plaintiff might be able to return to work in March.
(Id. at 21, 310.)  In a May, 2002 report, Dr. Hutchinson noted that plaintiff responded positively
to medications but was disabled.  There was no explanation why plaintiff could not perform any
work, or whether the statement of disability applied only to plaintiff's past work which was semi-
skilled.  (Id. at 21, 307-09.)  The ALJ properly concluded from this report that plaintiff's
symptoms rapidly improved after leaving her job.  (Id. at 22.)

         In the previously mentioned July 29, 2001 report, the ALJ noted that Dr.
Hutchinson opined that plaintiff's current condition (severe depression) was the same as her
condition in September, 1998.  The ALJ points out that nevertheless plaintiff was working in
1998, 1999 and 2000 doing complex work.[9]  (Id. at 22, 217-18.)  Furthermore, even if plaintiff's

---

[9]  Plaintiff takes issue with the assertion that she worked during this time period as she
was on disability for extended periods during this time.  These extended periods do not equate to
an inability to do any work whatsoever.  They are limited to not being able to do her past work

1   assessments show some abnormalities, as the ALJ acknowledged, these findings are not

2   consistent with an inability to at least do unskilled work.  (Id. at 22.)  The fact that plaintiff's

3   symptoms improved within six months after leaving her former job indicated to the ALJ that

4   plaintiff could do other work which did not have the same stress and the same difficulties with

5   supervisors.  The ALJ further noted that even Dr. Hutchinson's reports did not reveal anxiety or

6   panic attacks in public, or any anger problems dealing with people, and consequently there

7   should be no limitation in dealing with the public.

8            The ALJ also rejected Dr. Straehley's opinion, but gave specific and legitimate

9   reasons to do so.  He first summarized Dr. Straehley's opinion, which was based on a

10  consultation dated November 25, 2004, after the administrative hearing.  He opined, after

11  reviewing records and examining plaintiff, that she had major depression with mild psychotic

12  features, generalized anxiety disorder, and obsessive compulsive personality traits.  (Id. at 321.)

13  This psychiatrist thought that plaintiff's legal battles ( a worker's comp case and a civil case) had

14  taken a major toll on her.  Her GAF at this time was 60.[10]  He found that plaintiff could

15  understand and carry out simple and moderately complex tasks, but could not maintain attention

16  and concentration for an eight hour day or forty hour week.  He found her prognosis to be good,

17  however.  (Id.)  In the form regarding ability to do work related activities, Dr. Straehley found

18  that plaintiff had a marked limitation in understanding, remembering and carrying out detailed

19  instructions, a marked limitation in responding to work pressures and a moderate to marked

20  limitation in ability to respond appropriately to changes in a routine work setting.  (Id. at 322-23.)

21  _____

22  which was skilled and complex and involved individuals with whom she had personality
    conflicts.  Furthermore, the standards for disability in the worker's compensation context are
23  quite different from the standards utilized here to determine whether plaintiff can do any other
    type of work.

24      [10]  GAF is a scale reflecting the "psychological, social, and occupational functioning on a
    hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
25  Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 60 indicates
    moderate symptoms such as flat affect, circumstantial speech, occasional panic attacks, or
26  moderate difficulty in functioning as in few friends or conflicts with peers or co-workers.

1    The ALJ gave a variety of legitimate reasons to reject this opinion.  Dr.

2 Straehley's examination did not reflect any significant deficits in attention or concentration;

3 plaintiff, although appearing tired, did not have any problem recounting her medical history or

4 participating in the exam; plaintiff's daily activities included fixing things around the house,

5 sewing, working on the computer, doing housework, shopping, handling finances and legal

6 matters, and doing all that is needed in a house when one lives alone.  (Id. at 24.)  The ALJ also

7 rejected the finding of auditory hallucinations as the remainder of the record only indicated one

8 or two similar references, and no medication for this symptom was prescribed.  Nor did plaintiff

9 testify to these hallucinations at the hearing or seek treatment for this problem.  (Id.)  Dr.

10 Straehley's finding of anxiety disorder also conflicted with Dr. Hutchinson's finding of no

11 anxiety, Straehley's own observation that plaintiff did not appear anxious, and plaintiff's own

12 failure to report anxiety in her past treatment.  The ALJ concluded that Dr. Straehley relied on

13 plaintiff's subjective complaints which the ALJ did not find credible.  These reasons are specific

14 and legitimate and based on substantial evidence in the record.

15    The only contention plaintiff has in regard to Drs. Kaldor and Meek is that Dr.

16 Straehley's opinion is consistent with theirs in finding that plaintiff could not work.  As

17 defendant points out, however, these doctors evaluated plaintiff in the context of her worker's

18 compensation case which was focused on deciding whether plaintiff could return to her past job

19 which allegedly caused her depression.  Their findings were temporary only.  The work that the

20 ALJ found plaintiff can do now is a different type of work which will not involve the stress or

21 personality conflicts found in that former job.

22    Plaintiff makes much of the argument that although the ALJ relied on most of Dr.

23 Walter's testimony, that testimony contradicted this psychologist's written opinion.  The only

24 possible yet minimal contradiction is Dr. Walter's testimony that plaintiff would have mild to

25 moderate impairment in maintaining social functioning with supervisors and his written opinion

26 \\\\\

that such impairment would be moderate.[11]  (Tr. at 489, 351.)  Such a contradiction is not

significant.  As defendant aptly points out, the Ninth Circuit has recently held that moderately

severe depression does not warrant departure from the grids.  Hoopai v. Astrue, 499 F.3d 1071,

1077 (9th Cir. 2007).  Dr. Walter did not diagnose moderately severe depression, but only a

moderate impairment in one aspect of functioning.  He did note on the form that plaintiff would

be somewhere between semi-markedly and markedly restricted in responding to work pressures;

however, this statement did not contradict his testimony which was that "[h]er major problem

seems to be working under stress, but otherwise, there's no severe depressive state."  (Tr. at 488.)

His testimony did not specifically rate her level of impairment for this restriction.  The ALJ took

this limitation into account at the fifth step of the sequential analysis.

        The ALJ also relied on the relatively recent opinion of Dr. Morse, dated

December 7, 2004, who found that plaintiff could work on a consistent basis.  (Id. at 332.)  She

opined that plaintiff could do simple and repetitive tasks as well as detailed and complex tasks.

(Id. at 331.)  She could accept instructions from supervisors and could work with coworkers and

the public.  (Id.)  These findings were despite this psychiatrist's diagnosis of major depressive

disorder with psychotic features, in partial remission.  Plaintiff's GAF was 65 at this time.[12]

        The ALJ's rejection of the opinions of Drs. Hutchinson and Straehley was based

on specific and legitimate reasons supported by substantial evidence in the record.

---

[11]  There were no other contradictions between Dr. Walter's testimony and written
opinion in regard to the remainder of functional limitations assessed, but they were exactly the
same.  He found mild restrictions in activities of daily living, mild restrictions in maintaining
social functioning, mild restrictions in maintaining concentration, persistence, or pace, mild or
slight restrictions in interacting appropriately with others, and one episode of decompensation.
In regard to episodes of decompensation, the form gave only the following choices of boxes to
check: "none," "one or two," three, "four or more," so Dr. Walter checked the box for "one or
two."  (Tr. at 346, 351, 489.)

[12]  A GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild
insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional
truancy, or theft within the household), but generally functioning pretty well, has some
meaningful interpersonal relationships."  DSM IV at 32.

1          D. Whether the ALJ Failed to Credit the Testimony of Plaintiff or Her Lay Witness

2          Plaintiff asserts that the ALJ did not properly address her testimony or that of her

3  boyfriend, Mr. Wiedemeier, in regard to her limitations as a result of her mental impairment.

4          The ALJ determines whether a disability applicant is credible, and the court defers

5  to the ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater,

6  94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

7  credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

8  Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

9  supported by "a specific, cogent reason for the disbelief").

10          In evaluating whether subjective complaints are credible, the ALJ should first

11  consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

12  F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective complaints incredible

13  solely because objective medical evidence does not quantify them.  Id. at 345-46.  If the record

14  contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ

15  then considers the nature of the alleged symptoms, including aggravating factors, medication,

16  treatment, and functional restrictions.  See id. at 345-47.  The ALJ also may consider the

17  applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or

18  inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

19  and (3) daily activities.[13]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally

20  SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician

21  and third party testimony about nature, severity, and effect of symptoms, and inconsistencies

22  between testimony and conduct, may also be relevant.  Light v. Social Security Administration,

23

24          [13]  Daily activities which consume a substantial part of an applicants day are relevant.
"This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily
25  activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in
any way detract from her credibility as to her overall disability.  One does not need to be utterly
26  incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)
(quotation and citation omitted).

119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations,

see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for

medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Absent

affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony

must be clear and convincing.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595,

599 (9th Cir. 1999).

        In this case, the ALJ found plaintiff not to be credible because of her numerous

activities, including driving 50 to 100 miles per week, having a boyfriend, grocery shopping

twice a week, errands, laundry, attending a monthly science fiction club, preparing meals except

on weekends, living alone and taking care of a house as well as financial and legal matters, fixing

and repairing things around the house, sewing, spending time on the computer, and occasional

visits with family.  (Tr. at 17-18. 24.)  Plaintiff argues that she sometimes did not go grocery

shopping until the house was empty of food and she could not keep up with her housework.  The

ALJ was entitled to choose which evidence to believe.  The ALJ is accorded great weight in his

determination of credibility.  Id.  See also Brawner v. Secretary of Health and Human Services,

839 F.2d 432, 433 (9th Cir. 1988).  "Credibility determinations are the province of the ALJ."

Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995).  In this regard, questions of credibility

and resolutions of conflicts in the testimony are functions solely of the [Commissioner].  See

Yuckert v. Bowen, 841 F.2d 303, 307 (9th Cir. 1988); Sample v. Schweiker, 694 F.2d 639, 642

(9th Cir. 1982)."  Morgan v. Apfel, 169 F. 3d at 599.

        The ALJ also explained that plaintiff's condition improved with medication, and

at one point she decreased the medication without consulting her physician.  (Tr. at 304, 23, 230,

231, 232.)  A condition which can be controlled or corrected by medication is not disabling.  See

Montijo v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984).

        The ALJ also rejected plaintiff's claims of anxiety, panic attacks and

hallucinations.  He noted that she did not complain of these symptoms to treating doctors.  (Tr. at

23, 225-33.)   He added that plaintiff did report possible hallucinations but only to the most

recent consulting physician, and did not previously seek treatment for this problem.  (Tr. at 24.)

Further, no practitioner ever observed plaintiff to experience hallucinations.  Although Dr.

Straehley reported that plaintiff claimed to have experienced panic attacks every two weeks, he

also reported that she did not appear anxious.  Dr. Hutchinson's records did not include reports of

anxiety attacks by plaintiff.  The ALJ also took note of a July, 2001 report where Dr. Hutchinson

specifically stated that plaintiff did not experience anxiety or panic attacks.  (Id. at 24.)   The ALJ

discredited these subjective symptoms as plaintiff had not previously complained of them.  (Id.)

The ALJ did take into account those limitations which were not exaggerated and

found that she could do work which was not as stressful.  The ALJ properly analyzed plaintiff's

credibility in relation to the appropriate factors required by the Bunnell line of cases.

Plaintiff also claims that the ALJ failed to seriously consider the statement of her

boyfriend, Mr. Wiedemeier, regarding her limitations.  An ALJ is required to "consider

observations by non-medical sources as to how an impairment affects a claimant's ability to

work."  Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  "Lay testimony as to a

claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she

expressly determines to disregard such testimony and gives reasons germane to each witness for

doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d

1462, 1467 (9th Cir. 1996)).  Similar to the ALJ's role in evaluating the testimony of a claimant,

when evaluating the testimony of a lay witness "[t]he ALJ is responsible for determining

credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Sousa v.

Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039

(9th Cir. 1995)).

The Ninth Circuit holds that the ALJ must properly discuss lay witness testimony,

and that any failure to do so is not harmless unless no reasonable ALJ, when fully crediting the

testimony, could have come to a different disability determination.  Stout v. Commissioner, 454

1   F.3d 1050 (9th Cir. 2006).  This standard is extremely high and rivals, if not surpasses the

2   Chapman harmless error standard in criminal law (error harmless only if no reasonable doubt

3   about its lack of effect).

4         The ALJ here discussed Mr. Wiedemeier's daily activities questionnaire in detail,

5   and although not specifically rejecting it, he did consider it in conjunction with plaintiff's own

6   statements.  (Tr. at 18.)

7         Mr. Wiedemeier's statement was that plaintiff spends half of the day getting out

8   of bed, that she had minimum difficulty caring for her personal needs, that she does as little as

9   possible in her grooming habits, that she eats junk food and seldom makes prepared meals, that

10  she does her own grocery shopping, pays bills, does laundry, and although she gets no assistance

11  in doing these activities, they sometimes take her a long time.  (Tr. at 93-95.)  He also stated that

12  she sometimes does not go outside for days, that she belongs to a science fiction club and attends

13  monthly meetings, that she seldom visits friends or family, and seldom participates in other

14  social activities.  (Id. at 95-97.)  He stated that plaintiff's memory was poor, that she loses

15  concentration and as a result jobs go unfinished.  (Id. at 97.)

16        The ALJ fully discussed these statements, but added that plaintiff's boyfriend only

17  spent time with her on weekends.  (Tr. at 18, 93.)  He minimized this report because it was

18  lacking in specific details.  The ALJ noted that the questionnaire did confirm that plaintiff can do

19  certain activities.  (Id. at 18.)  Finally, the ALJ compared this questionnaire to the one completed

20  by plaintiff herself and they related the same information.  (Id.)  This report is considered to be of

21  limited evidentiary value as the boyfriend did not live with plaintiff, did not spend a lot of time

22  with her, and did not seem to know whether plaintiff had any difficulties getting along with other

23  people.  (Id. at 96.)

24        The ALJ properly discussed the testimony of plaintiff's boyfriend in light of Ninth

25  Circuit authority.

26  \\\\\

20

1      E.  Listing 12.04

2           Plaintiff contends that the ALJ erred in failing to find that she meets or equals

3    listing 12.04, for affective disorders.  The "Listing of Impairments" ("Listings") describe various

4    impairments of thirteen bodily systems, which presumptively preclude a person from working.

5    20 C.F.R. Pt. 404, Subpt. P, App. 1.  See Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990);

6    20 C.F.R. § 404.1520(d).  At the third step of the disability analysis, the ALJ determines whether

7    a person's condition either "meets" or "equals" a listing.  A mere *diagnosis* of a listed

8    impairment is not sufficient.  Specific findings included in each listing also must be met.  See,

9    e.g., Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).  Alternatively, other diagnostic tests,

10   or the combined effects of various conditions, may demonstrate the "equivalent" of the specific

11   required findings.  See, e.g., Sullivan v. Zebley, 493 U.S. 521, 531 (1990); Marcia v. Sullivan,

12   900 F.2d 172 (1990).  In sum, however, unless an impairment is as severe as and has lasted as

13   long as described in the listing, a person is not presumptively disabled.  Young, 911 F.2d at 183.

14          Mental Disorders are considered in Part 12 of the Listings. Listing 12.04 deals

15   with "Affective Disorders."  The Listing is comprised of three parts, labeled  "A," "B," and "C."

16   Both parts A and B of the listing must be met or equaled.  Alternatively, Part C must be met or

17   equaled.  The Part A criteria determine whether evidence of a depressive disorder is present.  20

18   C.F.R. Part 404, Subpt.  P, App. 12.04(A).  The Part B criteria evaluate the functional loss

19   resulting from a depressive disorder.  See, e.g., Cruse v. U.S. Dept. of Health & Human Services,

20   49 F.3d 614, 616 (10th Cir. 1995).  Part C criteria requires a medically documented history of

21   chronic affective disorder lasting at least two years.  The ALJ found plaintiff met the "A" criteria,

22   and this finding is not in question.

23          Listing 12.04(B) requires at least two of the following functional limitations:

24          1.  marked restriction of activities of daily living;

25          2.  marked difficulties in maintaining social functioning;

26          3. deficiencies of concentration, persistence or pace resulting in

21

frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.

"Marked" means "more than moderate, but less than extreme."  See Listing12.00(C).

Paragraph C requires demonstration of one of the following: (1) repeated and extended episodes of decompensation; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C)(1)-(3).

In regard to subsection (B), the ALJ found that plaintiff did not meet these criteria because the findings of marked limitations by Drs. Straehley and Hutchinson were based on plaintiff's subjective complaints which were not supported by objective findings.  (Tr. at 19.) Instead, the ALJ relied on Dr. Walter's opinion, which found only mild limitations in activities of daily living, maintaining social functioning, and concentration, persistence and pace.  (Tr. at 19.) He explained that although Dr. Walter found plaintiff had moderate limitations in dealing with supervisors, it was due to the nature of her past stressful working environment, and in future she would be limited to low stress work.  The ALJ also reiterated that plaintiff had undergone only one episode of decompensation, and that it was related to termination of her most recent employment.  (Id.)

As to subsection (C), the ALJ again relied on Dr. Walter's testimony that the these criteria were not met.  (Id.)

Plaintiff complains that the ALJ mischaracterized the opinions of Drs. Hutchinson, Straehley and Morse, as well as the statements and testimony of plaintiff and her

1    boyfriend.  The ALJ's rejection of much of this evidence has already been addressed in previous

2    sections.  The ALJ was permitted to rely on Dr. Walter's testimony and findings that plaintiff did

3    not meet this listing.  See tr. at 336-51, 489.  The ALJ also appropriately relied on Dr. Morse's

4    opinion that plaintiff could work.  (Id. at 331-32.)  Plaintiff's assertion that Dr. Morse opined that

5    she might have difficulty with stress at work does not equate to a finding that she meets the

6    listings.  This psychiatrist unequivocally opined that plaintiff could work.

7                    The DDS physician was consistent in finding that plaintiff did not meet the B or C

8    criteria of the listing.  (Tr. at 275-75A.)  Plaintiff was found to have only moderate limitations

9    under the B criteria, and insufficient evidence of episodes of decompensation.  (Id. at 275.)

10                   Because the ALJ properly rejected treating source evidence and appropriately

11   relied on the expert testimony of Dr. Walter and consulting opinion of Dr. Morse, and made a

12   proper credibility finding, the ALJ's finding that plaintiff did not meet or equal the listings is

13   based on proper legal standards and supported by substantial evidence in the record.

14          F.  Hypothetical to Vocational Expert

15                   Plaintiff asserts that the hypothetical to the vocational expert did not include all of

16   plaintiff's limitations.

17                   Hypothetical questions posed to a vocational expert must include all the

18   substantial, supported physical and mental functional limitations of the particular claimant.

19   Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir.1995); see Light v. Social Sec. Admin., 119 F.3d

20   789, 793 (9th Cir.1997).  If a hypothetical does not reflect all the functional limitations, the

21   expert's testimony as to available jobs in the national economy has no evidentiary value.

22   DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  But see Thomas v. Barnhart, 278 F.3d

23   947 (9th Cir. 2002) (approving hypothetical directing VE to credit specific testimony which VE

24   had just heard); Matthews v. Shalala, 10 F.3d 678 (9th Cir. 1993) (failing to include all

25   limitations in a hypothetical may be harmless error if the ALJ's conclusions are supported by

26   other reliable evidence).  While the ALJ may pose to the expert a range of hypothetical questions,

23

1  based on alternate interpretations of the evidence, substantial evidence must support the

2  hypothetical which ultimately serves as the basis for the ALJ's determination.  Embrey v. Bowen,

3  849 F.2d 418, 422 (9th Cir. 1988).[14]

4        The hypothetical to the expert upon which the ALJ based his decision was simply

5  that plaintiff could do work at the medium, light, and sedentary levels, but it would have to be in

6  a low stress environment.  (Tr. at 493-94.)  The expert first clarified that skills were not

7  transferable, and then responded that he had picked out jobs which do not require "heavy time

8  frames for completion."  (Id. at 494.)  At the medium level, he identified the jobs of sweeper-

9  cleaner industrial, cleaner-hospital, and dump truck driver.  (Id. at 494).  At the light level, the

10 jobs were mail clerk, office helper, and cleaner-housekeeping.  (Id. at 494-95.)  At the sedentary

11 level, the jobs were order clerk, clerk typist, and production clerk.  (Id. at 495.)  Because these

12 sedentary jobs required an SVP level of 4, the ALJ did not consider them.  (Tr. at 27.)   He did

13 find that plaintiff could do the medium and light jobs, which all had SVP levels of 2.

14       Plaintiff asserts that the ALJ's hypothetical was "a rambling piece of

15 incoherence," and that it did not include the limitations imposed by plaintiff's and lay witness

16 statements, and Drs. Hutchinson, Straehley, Kaltor, and Meek.  Plaintiff attempts to include as

17 part of the hypothetical a lengthy summary of the medical evidence by the ALJ which preceded

18 the hypothetical question.  It was not part of the hypothetical, however, which was quite

19 straightforward.  (Tr. at 493-94.)  The limitations proposed by plaintiff are not supported by the

20 record, as already discussed in previous sections.

21       Because the hypothetical to the vocational expert accurately reflected plaintiff's

22 limitations, substantial evidence supports the ALJ's finding in this regard.

23 \\\\\

24

25    [14]  Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a
   hypothetical question propounded by a claimant's counsel."  Magallanes v. Bowen, 881 F.2d
26 747, 756 (9th Cir. 1989).  The ALJ is free to accept them if they are supported by substantial
   evidence or reject them if they are not.  Id. at 756-757.

1  CONCLUSION

2          Accordingly, plaintiff's Motion for Summary Judgment is DENIED, the

3  Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed

4  to enter Judgment for the Commissioner.

5  DATED: 03/14/08                                    /s/ Gregory G. Hollows

6                                                     _____
                                                      GREGORY G. HOLLOWS
                                                      U.S. MAGISTRATE JUDGE
7  GGH/076
   Mattox1698.ss.wpd
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26